IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CEI ENTERPRISES, INC.,

    Plaintiff,

v.     Case No. 1:21-cv-01212-MLG-LF

PROFESSIONAL COATING
TECHNOLOGIES, INC. and
MARK WINKELMAN,

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER AND COUNTERCLAIM**

This matter comes before the Court on a Motion for Leave to File First Amended Answer and Counterclaim filed by Defendants Professional Coating Technologies, Inc., and Mark Winkelman (collectively, "PCT") on October 14, 2022. Doc. 79. Plaintiff CEI Enterprises, Inc. ("CEI") filed a response (Doc. 93), to which PCT replied. Doc. 95. Having reviewed the parties' submissions and the applicable law, the Court denies the motion.

**BACKGROUND**

This suit arises from an alleged breach of contract. CEI manufactured asphalt-rubber blending plants and related equipment and parts. Doc. 1 ¶ 7. PCT produces asphalt emulsions used in road building to coat water pipes. *Id.* ¶ 8. Winkelman is PCT's chief executive officer. *Id.*

Sometime between 2017 and 2018, CEI and PCT entered into a contract stipulating that CEI would build a "complete system" to be used in manufacturing PCT's products in order to "automate its facility to significantly increase production and sales." Doc. 79 at 2. The complete system consisted of two phases: (1) the installation of large tanks and related equipment and (2) the design, construction and installation of an automation system that would work with those tanks.

1

Doc. 13 at 3. In PCT's view, "those tanks [were] useless without completion of the second phase of the project," and that, due to personnel changes at CEI, "very little work" was done on the project throughout 2018. *Id.* at 3, 4. Ultimately, PCT alleges that "the system is not complete, does not work, and never has worked." Doc. 79 at 2.

On January 22, 2019, the parties executed a Secured Promissory Note ("Note") and Guaranty. Doc. 1-1. PCT alleges that it executed the Note as confirmation of the remaining balance on the contract and its intention to pay that balance in exchange for CEI's completion of the work. Doc. 13 at 5. By contrast, CEI claims that the Note was executed because "PCT experienced alleged difficulties paying for the [system] and requested CEI's assistance in working out a formal payment schedule." Doc. 1 at 2. At any rate, the parties executed the Note which reflected PCT's payment obligation to CEI in connection with the sale of the complete system, namely, a principal sum of $1,071,453.75 plus interest and an estimated balance of $678,742.44. Doc. 1 at 3; Doc. 1-1 at 1. Winkelman signed the Guaranty, which served as material inducement for CEI to make the loan evinced in the Note. *Id.*

In 2020, CEI closed its operations. Doc. 79 at 2. It informed PCT that it would transfer the project to two entities affiliated with CEI: Astec Industries, Inc. (a nonparty corporation that owns CEI) and Heatec, Inc. (a nonparty corporation owned by Astec). *Id.* According to PCT, CEI informed the company that the Note "was being transferred to Heatec" and "directed PCT to pay monthly payments on the Note to Heatec." *Id.*; *see also* Doc. 79-4 (Deposition of Michael Anderson, CEI President). However, CEI disputes this fact. Instead, it claims that CEI never transferred or assigned the Note or Guaranty to Heatec, Astec or any other nonparty entity.[1] Doc. 93 at 10-11.

---

[1] CEI also points to Anderson's testimony as corroboration of this fact. Doc. 93 at 10.

2

After PCT allegedly failed to pay the outstanding balance on the Note by the maturity date, CEI filed a complaint against PCT on December 22, 2021. Doc. 20 at 2-3; *see generally* Doc. 1. PCT answered on February 17, 2022, asserting various affirmative defenses and counterclaims. Doc. 13 at 2-8. Several weeks later, CEI moved to dismiss those counterclaims. Doc. 19. Then, on October 14, 2022—months after the deadline of March 25, 2022, to amend pleadings and over one month after discovery terminated on August 29, 2022—PCT moved for leave to amend its answer and counterclaims. Doc. 18 at 2-3; *see generally* Doc. 79. Based on what it sees as new information revealed during and after discovery, PCT seeks to add defenses and a counterclaim including standing, waiver by assignment/equitable assignment, waiver by estoppel, and intentional misrepresentation. Doc. 79 at 1.

## DISCUSSION

If the deadline for amendments set in the scheduling order has passed, a party may only amend her complaint if she demonstrates both good cause for seeking modification under Federal Rule of Civil Procedure 16(b)(4) and satisfies the Federal Rule of Civil Procedure 15(a) standard. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Therefore, in order for PCT to amend its answer, it must satisfy both the Rule 16 and 15 standards.[2]

**I.     PCT has not demonstrated good cause under Rule 16(b)(4).**

Rule 16(b)(4) provides that the Court may modify a scheduling order "only for good cause and with the judge's consent." This standard "requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *See Gorsuch, Ltd., B.C.*, 771 F.3d

---

[2] Because there is a "rough similarity" between the "good cause" standard of Rule 16 and the "undue delay" standard of Rule 15, *see Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009), the analysis of the two standards overlaps. Moreover, if PCT cannot demonstrate good cause under Rule 16, there is no need to analyze Rule 15. Regardless, the Court offers an analysis under both rules.

at 1240 (internal quotation marks and brackets omitted). "This . . . means it must provide an adequate explanation for any delay." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1214 n.4 (10th Cir. 2006). For example, an adequate explanation exists where "a [party] learns new information through discovery or if the underlying law has changed."[3] *Gorsuch, Ltd., B.C.*, 771 F.3d at 1240; *see also March v. Raabe*, No. 21-cv-00921-MLG-KK, 2023 WL 3092881, at *3 (D.N.M. Apr. 26, 2023) (granting motion for leave to amend where the plaintiff demonstrated diligence in seeking to amend the complaint with new evidence uncovered during discovery). By contrast, there is no adequate explanation where the movant "knew of the underlying conduct but simply failed to raise [their] claims." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018). District courts retain discretion to make such determinations. *See Gorsuch, Ltd., B.C.*, 771 F.3d at 1240.

In this case, PCT argues that good cause exists on two bases: (1) the "impossibility of the tight" deadline to amend which was set for two weeks after the scheduling order was issued and five months before the close of discovery and (2) the discovery of new information pertaining to the proposed amendments. Doc. 79 at 7. CEI disagrees that good cause exists. Doc. 93 at 8-9. Instead, it asserts that PCT failed to diligently pursue discovery and that there were no "new facts" because PCT already had documents in its possession that revealed the relationships between CEI, Astec and Heatec. *Id.* at 9. In its reply, PCT maintains that it acted diligently and that it learned new information during discovery justifying amendment. Doc. 95 at 1-4. Specifically, PCT completed discovery without needing to extend the period so there was no undue delay. *Id.* at 2. In addition, PCT concedes that it possessed the documents in question prior to discovery but that

---

[3] The parties do not assert that the underlying law has changed; thus, the Court only addresses the "new information" theory.

those documents are irrelevant in substantiating the proposed amendments. *Id.* at 3.

The Court concludes that PCT has not demonstrated good cause. The question is whether PCT already knew about what it claims to be "new information" prior to the deadline to amend pleadings. Doc. 18 at 2-3. If it did, then there is no good cause for granting leave to amend. *See Husky Ventures, Inc.*, 911 F.3d at 1020. Otherwise, there is good cause. *See Gorsuch, Ltd., B.C.*, 771 F.3d at 1240. For the following reasons, the Court concludes that the PCT already knew about the facts necessary to have pled its proposed amended defenses and counterclaim with its initial Answer and thus there is no good cause for granting leave to amend. I address each proposed defense and counterclaim below.

**A.    Standing**

PCT claims that it learned on October 11, 2022, that CEI lacked standing to enforce the Note and, by extension, the Guaranty. Doc. 79 at 11. This is because CEI is evidently not in possession of the Note. *Id.* Without possession, CEI cannot demonstrate that it is holder on the Note. *Id.*; *see also* Doc. 73 at 8-9. CEI disagrees with this assessment, arguing that its lack of possession is a "red herring" that does not support a new defense because CEI need not be in possession of the Note to establish standing to enforce it.[4] Doc. 93 at 13-15.

It is true that there is no evidence to show that PCT had this information prior to the deadline to amend pleadings. That is, CEI's assertion that PCT had documents in its possession showing the relationships between CEI, Heatec and Astec is unavailing because the documents to which it refers (Exhibits C and G) are irrelevant to whether CEI had the Note in its possession. Doc. 93 at 9; *see also* Docs. 79-3 (Exhibit C); 79-6 (Exhibit G). For example, Exhibit C shows an

---

[4] The parties also seem to disagree on whether New Mexico or Tennessee substantive law applies to addressing this issue. Doc. 73 at 9; Doc. 93 at 13 n.7.

email chain dating from September 2021. Nowhere in the email chain is there mention of CEI's possession of the Note. *See generally* Doc. 79-3. Similarly, there is no mention of CEI's possession in Exhibit G which shows a letter from Winkelman to CEI regarding flaws in the design of the automated system. Doc. 79-6 at 1.

However, it is evident that, as early as January 22, 2019, PCT knew that CEI executed the Note. Doc. 1-1 at 1. PCT also knew that, in November 2021, *Astec* wrote to PCT attempting to collect on the Note. Doc. 1-3. This shift—from CEI executing the Note to Astec attempting to collect on the Note—implicates CEI's standing (or lack thereof) to enforce the Note as against PCT. Because PCT likely knew these facts well before the amendment deadline, the Court concludes that there is no good cause to now assert standing as a defense.[5]

**B.      Waiver by assignment/equitable assignment**

PCT claims that amendment is justified to add waiver by assignment/equitable assignment as an affirmative defense. Doc. 79 at 7-8. Specifically, it learned about the distinctness and separateness of CEI, Heatec, and Astec. *Id.* at 7. The Court understands PCT to argue that this evidence supports the defense that "CEI has waived through assignment and/or equitable assignment any right it may have once had to sue on the Note." *Id.*

Yet PCT fails to cite specific facts establishing when they became aware of the basis to support these defenses. *Id.* at 13-14. For example, PCT does not assert that it learned new information relating to the transfer of the project, Note and Guaranty from CEI to Heatec. PCT

---

[5] At this juncture, it is difficult to assess whether the new information PCT learned is material to the proposed amended defense of standing. In other words, does CEI's lack of possession of the Note actually impact its standing to enforce it as against PCT? If it is material, then the new information counsels in favor of finding good cause. Otherwise, if it is irrelevant, then there is no good cause. For reasons discussed *infra*, the Court concludes that this fact is irrelevant; as such, there is no good cause for amending on this basis.

only states that it believes CEI is "intentionally withholding additional information regarding the transfer or assignment from CEI to Heatec and/or Astec." *Id.* at 14. As the Court sees it, the withholding of information does not necessarily guarantee that PCT will learn "new information" to otherwise support a finding of good cause. Without new information supporting amendment on this basis, there is no good cause.

### C.    Waiver by estoppel

PCT does not claim that new information justifies amendment to add waiver by estoppel as an affirmative defense. Doc. 79 at 14. Nor does PCT cite specific facts establishing when they became aware of the basis for waiver by estoppel. *Id.* Again, without new information supporting amendment, the Court finds no good cause.

### D.    Intentional misrepresentation

Finally, PCT asserts that it learned during discovery that "CEI never intended to perform the work pursuant to the contract and had already received quotes and engaged with a subcontractor without informing PCT." Doc. 79 at 7. Specifically, it asserts that, during and after the discovery period, it learned that "it was always CEI's intention to use another company, MINDS, for the controls system rather than 'develop[ing] something from scratch.'" *Id.* at 15. PCT argues that this evidence indicates intentional misrepresentation. *Id.*

However, there is evidence in the record indicating that PCT was already aware of this fact prior to the deadline to amend pleadings. For example, in Winkelman's affidavit, he testified that "MINDS is the technology firm CEI contracted with to provide portions of the automated system to PCT." Doc. 24-1 at 4. He goes on to testify that, "On August 13, 2021, CEI's engineering manager [e-mailed Winkelman] a punch list showing what items had not been completed . . . Specifically, line items 9, 10 and 11 of that punch list indicate 'Heatec [CEI] will contract and pay

7

for MINDS to finish programming the new Start/Stop Batch Procedure[.]'" *Id.* The Court's review of the August 13 e-mail and the enclosed punch list corroborate Winkelman's testimony. *See* Doc. 24-1 at 38-47. Of particular note is an entry in the punch list indicating that "MINDS [was] to correct graphics and process controls as required." *Id.* at 45. This information indicates that PCT knew that CEI was contracting with MINDS to develop the controls system and that it was aware of this information at least as early as August 13, 2021, well before the deadline to amend its pleading of March 25, 2022. Accordingly, the Court finds that there is no good cause to support amendment on this basis.

In sum, the Court finds that PCT has not met the stringent Rule 16 good cause standard. The Court now addresses whether PCT has met the Rule 15(a) standard.

## II.     PCT has not met the Rule 15(a) standard.

Under Rule 15, a plaintiff may amend her complaint once as a matter of course, after which the plaintiff must seek consent from the opposing party or leave of the court. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." *Id.*; *see Cohen v. Longshore*, 621 F.3d 1311, 1314 (10th Cir. 2010) (explaining that a district court has discretion to grant or deny leave). The purpose of this rule is to "provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter*, 451 F.3d at 1204 (quotation marks omitted). Courts typically favor allowing parties to amend their complaints absent a showing of "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Beginning with futility, the Court addresses each of these factors below.

A. **Futility**

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quoting *Jefferson Cnty. Sch. Dist. v. Moody's Inv.'s Servs.*, 175 F.3d 848, 859 (10th Cir. 1999)). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim[.]" *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). "In order to determine whether a proposed amendment is futile, the court must analyze the proposed amendment as if it were before the court on a motion to dismiss pursuant to Rule 12(b)(6)." *Childs v. Unified Life Ins. Co.*, 781 F. Supp. 2d 1240, 1251 (N.D. Okla. 2011) (quoting *Collins v. Wal–Mart, Inc.,* 245 F.R.D. 503, 507 (D. Kan. 2007)) (brackets omitted). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). The burden rests on the party asserting futility in opposing leave to amend. *See Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 953 F. Supp. 2d 1176, 1181 (D. Kan. 2013), *aff'd*, 810 F.3d 1161 (10th Cir. 2016).

In this case, CEI essentially argues that the standing defense is futile because there is no evidence, new or otherwise, that CEI transferred the rights under the Note or Guaranty to Heatec or Astec. Doc. 93 at 10, 12. Heatec was merely brought in to "assist CEI with the PCT project, including handling payments from PCT under its [Note] with CEI" and to "collect[] payments from PCT for the benefit of CEI." *Id.* at 10-11 (alterations and emphasis omitted). PCT disagrees, arguing that, because Heatec cashed the checks made payable to CEI, "Heatec assumed the Note and payments thereunder." Doc. 95 at 5.

Accepting as true the fact that CEI never transferred the rights under the Note or Guaranty

9

to Heatec or Astec, the Court still finds that CEI has standing to sue under the Note and Guaranty. The fact that CEI is not in possession of the Note is irrelevant because it may still enforce the Note even without possession. *See, e.g.*, NMSA 1978, § 55-3-309(a) (1992) ("A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process."); *see also* Tenn. Code Ann. § 47-3-309(a) (2003) (same). Absent facts indicating that CEI transferred the right to other nonparty entities or otherwise merged with the other entities, *see, e.g.*, NMSA 1978, § 53-19-62.2(A)(3) (1995) (explaining that when a merger takes effect "all debts, liabilities and other obligations of each limited liability company and other entity that is party to the merger become the obligations of the surviving entity"), the Court concludes that PCT's standing defense is futile. For the same reasons, the Court finds that the assignment defense is futile.

As for waiver by estoppel, CEI argues that this defense is futile because PCT cites no evidence that it was misled by CEI resulting in PCT's detrimental reliance. Doc. 93 at 17. There is no proof to show an essential element of the defense, namely, that PCT had an honest and reasonable belief based on CEI's conduct that CEI would not assert its right to enforce the Note or Guaranty if PCT was unable to sell its product. *Id.* at 18. CEI asserts that the Note itself makes no reference to waiver of its right to enforce the Note based on PCT's inability to sell its product. *Id.* PCT disagrees, arguing that it has shown evidence of detriment in the form of an uncompleted project and wasted resources. Doc. 95 at 6. It also points to an email from CEI acknowledging that

PCT will be unable to pay on the Note until the product is operational. *Id.* It is worth noting that CEI does not explain whether this language from the e-mail was included in the Note executed between the parties.

The Court finds CEI's arguments persuasive. PCT has failed to show that it had an honest and reasonable belief based on CEI's conduct (i.e., transferring the project to Heatec but not rights under the Note or Guaranty) that CEI would not assert its right to enforce the Note or Guaranty if PCT was unable to sell its product. This is an essential element of the defense. *See J.R. Hale Contracting Co., Inc. v. United N.M. Bank at Albuquerque*, 1990-NMSC-089, ¶ 12, 110 N.M. 712, 799 P.2d 581; *accord Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 723 (Tenn. Ct. App. 1998). Because PCT has failed to plead an essential element, amendment to add the defense is futile.

As for the counterclaim of intentional misrepresentation, it too is futile because PCT has failed to state a claim. PCT alleges that "CEI failed to inform PCT that CEI would use a nonparty entity to perform the work described in the contracts between the parties." Doc. 79-1 at 8. But, as the Court acknowledged earlier, that is not accurate. PCT knew that CEI was contracting with MINDS to develop the controls system. Because PCT knew this fact, it cannot now argue that it was deceived or induced into contracting with CEI. Accordingly, it has failed to state a claim for intentional misrepresentation.

**B.     Undue Prejudice**

"The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party." *Minter*, 451 F.3d at 1207. "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." *Id.* at 1208 (internal quotation marks and citation omitted). "Most often, this occurs when the amended claims arise out of a subject matter different

11

from what was set forth in the complaint and raise significant new factual issues." *Id.*

CEI argues that allowing the proposed amendments for estoppel and intentional misrepresentation would result in undue prejudice. Doc. 93 at 23. It claims that it could have pursued more information with respect to these defenses during discovery had it "known about them." *Id.* It also adds that key witnesses are no longer employees of CEI, Heatec, or Astec and may not be subject to subpoena. *Id.* PCT counters that there will be no undue prejudice to CEI because CEI can file a motion requesting limited discovery and that the relevant witnesses are still available to subpoena. Doc. 95 at 7.

The Court concludes that amendment would not result in undue prejudice to CEI. The amendments—which include standing, assignment, waiver by estoppel, and intentional misrepresentation—do not unduly impact CEI in preparing its defense. Nor do the claims arise out of a subject matter different from what was set forth in PCT's Answer or raise significantly new factual issues.

### C.     Undue Delay

"Undue delay is demonstrated where the proposed amendment comes after the deadline to amend pleadings and the amending party has no adequate explanation for the delay." *Nowell v. Medtronic Inc.*, 372 F. Supp. 3d 1166, 1212 (D.N.M. 2019). "[U]ntimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citations omitted). Indeed, "[t]he longer the delay, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Minter*, 451 F.3d at 1205 (internal quotation marks and citation omitted). Therefore, the Court focuses on the reasons for the delay, denying

leave to amend "when the party filing the motion has no adequate explanation for the delay." *Id.* at 1206 (quoting *Frank*, 3 F.3d at 1365-66).

Here, PCT filed the motion on October 14, 2022—less than two months after the close of discovery on August 29. *See generally* Doc. 79. Despite the months long delay between the scheduling order deadline to amend the pleadings (of March 25, 2022) and PCT's filing of the motion, the Court is not convinced that such a delay is undue on account of the recent termination of discovery on August 29, 2022. *Compare Wagner Equip. Co. v. Wood*, 289 F.R.D. 347, 350-51 (D.N.M. 2013) (determining that the plaintiff's filing of second motion to amend six weeks after deadline for filing amendments was reasonable)*, with Gorsuch, Ltd., B.C.*, 771 F.3d at 1242 (finding no good cause for delay where the party filed a third motion to amend after a nearly two-year delay). Consequently, there was no undue delay.

**D.     Dilatory Motive**

Neither party argues dilatory motive and, absent facts to establish otherwise, the Court credits that PCT did not have a dilatory motive in filing the motion.

In sum, the Court finds that PCT has not met the Rule 15 standard primarily because the amendments are futile.

## CONCLUSION

For the foregoing reasons, the Court denies PCT's motion. Doc. 79. It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

13