IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CEI ENTERPRISES, INC.,

    Plaintiff,

v.                                                                                                  Case No. 1:21-cv-01212-MLG-LF

PROFESSIONAL COATING
TECHNOLOGIES, INC. and
MARK WINKELMAN,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### BACKGROUND

Plaintiff CEI Enterprises, Inc., ("CEI") is a Tennessee corporation with its principal place of business in New Mexico. Doc. 1 at 1 ¶ 1. It manufactures asphalt-rubber blending plants and related equipment and parts. *Id.* at 2 ¶ 7. Professional Coating Technologies, Inc., ("PCT") is a Texas corporation that produces asphalt emulsions used in road building to coat water pipes. *Id.* at 1-2 ¶¶ 2, 8.

In July 2017, CEI and PCT entered into an agreement (the "2017 contract") providing that CEI would build a "complete automated system" to "automate [PCT's] facility to significantly increase production and sales." Doc. 79 at 2; Doc. 19-1 at 15. The project consisted of two phases: (1) the installation of large tanks and related equipment and (2) the design, construction and installation of an automation system that would work with those tanks. Doc. 13 at 3 ¶¶ 7-8. The goods were to be shipped to and the services were to be rendered at PCT's plant in Texas. Doc. 19-1 at 15; Doc. 1 at 1 ¶ 2. Those terms were simple enough, but in January 2018, CEI requested that PCT execute a replacement contract based on "errors" it identified in the original contract.

1

Doc. 13 at 4 ¶ 11. PCT acquiesced to that request and an amended agreement (the "2018 contract") was executed in New Mexico. Doc. 19-2 at 14. It contained several material modifications including price, technical specifications, and the controlling law provision.[1] Doc. 13 at 4 ¶ 11; Doc. 24 at 3 ¶¶ 5, 8. PCT knew of the changes to the price and specifications but claims it was unaware of the change to the controlling law provision. Doc. 24 at 3 ¶¶ 5-8.

From January 2018 to June 2018, CEI did "very little work" towards completion of the project. Doc. 13 at 4 ¶ 13. The long delay was allegedly due to personnel changes at CEI. *Id.* ¶ 14. CEI then informed PCT that it "was having trouble finding people to complete the project," so it put the burden on PCT and asked PCT to find contractors who could complete the work. *Id.* ¶ 15 CEI told PCT that it would credit that expense against the 2018 contract price. *Id.* PCT proceeded to find those contractors who could move the project forward. *Id.* ¶ 16. PCT has paid these contractors approximately $500,000 so far. *Id.* It is unclear, however, whether CEI ever credited this expense as it represented to PCT. Regardless, at the close of 2018, CEI had "made very little, if any progress on the project." *Id.* ¶ 17.

Though the prospects for a successful business venture between PCT and CEI were not off to an auspicious beginning, the parties opted to enter into an additional legal agreement: PCT executed a Secured Promissory Note (the "Note") and Guaranty.[2] Doc. 1-1; Doc. 1-2. The Note had two provisions of import. First, PCT promised to pay more than $1 million to CEI. Doc. 1-1 at 1. Second, PCT released CEI from claims for damages. *Id.* at 4. The specific release language reads as follows:

---

[1] Whereas the controlling law provision of the 2017 contract specified New Mexico, the 2018 contract listed Tennessee. *Compare* Doc. 19-1 at 14 *with* Doc. 19-2 at 13.

[2] The Note was executed on January 22, 2019. Doc. 1-1 at 1, 4. Mark Winkelman, PCT's Chief Executive Officer, signed the document. *Id*. at 4.

> In consideration of the foregoing and as a condition to the extension of time period for payment under the [contract], [PCT] hereby releases [CEI] from any and all claims, liabilities, obligations, counterclaims, offsets and damages of any kind, contingent or otherwise, known or unknown, and agrees (i) that [CEI] has committed to fully perform all of its obligations under the [contract], and (ii) not to assert any warranty or other claim against [CEI] thereunder or to exercise any set off against the payments due hereunder.

*Id.* A dispute subsequently arose regarding the purpose of the Note. PCT alleges that it executed the Note as confirmation of the remaining balance on the contract and its intention to pay that balance in exchange for CEI's actual completion of the work. Doc. 13 at 5 ¶ 20. CEI sees it differently, alleging that the Note was executed because PCT experienced "difficulties paying for the [system] and requested CEI's assistance in working out a formal payment schedule." Doc. 1 at 2 ¶ 11. At any rate, the Note reflected PCT's payment obligation to CEI in connection with the sale of the complete system. *Id.* at 3 ¶ 12; Doc. 1-1 at 1.

At the close of 2020, CEI dispatched representatives to PCT's plant to try and convince PCT that the project was complete. Doc. 13 at 5 ¶ 25. PCT was unpersuaded. It asserts that "[t]he automation system has never been completed and has never been functional." *Id.* To date, PCT has paid $600,000 to CEI for its goods and services. *Id.* ¶ 26.

## PROCEDURAL HISTORY

On December 22, 2021, CEI filed a complaint against PCT and Winkelman after PCT failed to pay the outstanding balance on the Note by the maturity date. Doc. 20 at 2-3; *see generally* Doc. 1. The complaint attached the Note, the Guaranty, and a letter from CEI to PCT. Doc. 1-1; Doc. 1-2; Doc. 1-3. PCT answered on February 17, 2022, asserting various affirmative defenses and counterclaims including breach of contract, violation of the New Mexico Unfair Practices Act ("UPA"), breach of the covenant of good faith and fair dealing, and negligent misrepresentation. Doc. 13 at 2-8. PCT seeks damages in the form of lost revenue, lost business opportunities, monies

paid to CEI to date, reimbursement for the monies spent by PCT on outside contractors, and attorney's fees. *Id.* at 6 ¶¶ 27, 33-34. CEI now moves to dismiss PCT's counterclaims, asserting that the terms of the Note release CEI from liability under the counterclaims; the terms of the contract bar relief due to the limited warranty clause, the thirty-day inspection period, the integration clause, and the election of Tennessee law as controlling; and the non-contractual counterclaims are barred by the economic loss rule. Doc. 20 at 6-19. PCT responded in opposition, attaching an affidavit from Winkelman, Doc. 24-1 at 1-6, the 2017 and 2018 contracts, *id.* at 7-36, an email from CEI to PCT relating to the purpose of the 2018 contract, *id.* at 37, an email from Astec to PCT showing a "punch list," *id.* at 38, the punch list, *id.* at 39-47, and the Note. *Id.* at 48-51.

## DISCUSSION

**I.     The controlling law provision in the 2018 contract supersedes the controlling law provision in the 2017 contract.**

The law allows for parties to substitute a prior agreement with a new one. Restatement (Second) of Contracts § 279 (1981). In that instance, and even when a subsequent contract contains a term that is inconsistent with that of an earlier agreement, the latter agreement is controlling. *K & V Sci. Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 164 F. Supp. 2d 1260, 1263 (D.N.M. 2001) ("When two parties execute a second contract that deals with the same subject matter as the first, the two contracts must be interpreted together; insofar as the contracts are inconsistent, the later one prevails."), *rev'd on other grounds*, 314 F.3d 494 (10th Cir. 2002); *see also Gonzalez-Aller v. N. N.M. Coll.*, Civ. No. 11-105 LH/ACT, 2012 WL 13076229, at *3-4 (D.N.M. Sept. 17, 2012); 6 Arthur L. Corbin, Corbin on Contracts, § 1296 (1962). These legal maxims facially apply to the instant facts, and the provisions of the 2018 contract appear binding. Nevertheless, PCT seeks a different result. It asserts that because the contract was executed in New

Mexico, our state's law should apply. Doc. 24 at 7-10. While it is true that "New Mexico follows the choice-of-law doctrine of *lex loci contractus*—the law of the place of contracting—to issues involving contract interpretation," *Saveraid v. State Farm Ins. Co.*, 597 F. App'x 492, 494-95 (10th Cir. 2015), an exception applies when "the law to be applied to a particular dispute [is] chosen by the parties through a contractual choice-of-law provision." *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 7, 144 N.M. 464, 188 P.3d 1215. That is the case here. The text of the 2018 contract provides that any disputes regarding the agreement are to be adjudicated in accordance with Tennessee law.

PCT suggests that this text should be ignored because the 2018 contract provides New Mexico as the chosen forum for resolution of disputes. Doc. 24 at 7. While true, that fact is not dispositive. Forum selection and choice-of-law are two legally distinct concepts. *Compare Forum-Selection Clause*, Black's Law Dictionary (11th ed. 2019) ("A contractual provision in which the parties establish the place (such as the country, state, or type of court) for specified litigation between them.") *with Choice-of-Law Clause*, Black's Law Dictionary (11th ed. 2019) ("A contractual provision by which the parties designate the jurisdiction whose law will govern any disputes that may arise between the parties."). Parties may agree on a choice-of-law provision that is adjudicated in a different jurisdiction.

PCT also asserts that the 2018 contract's choice-of-law provision should be disregarded "for fraud in the execution." Doc. 24 at 8. This argument lacks factual support. PCT knew the 2018 contract "adjusted the contract price and made some changes to the technical specifications of what CEI was providing[.]" *Id.* at 3 ¶ 5. However, it "was unaware that the 'General Conditions' of the [2018] Contract altered the controlling law clause from New Mexico to Tennessee." *Id.* ¶ 8. In other words, PCT failed to carefully read the contract it was signing. That omission is negligent,

5

not fraudulent. As a pop star once noted, "Read your contracts. Up and down, left and right." Minou Clark, *Lauren Jauregui Dishes on Fifth Harmony, Trump and Coming Out as Bisexual*, HUFFPOST (Mar. 10, 2017, 2:09 PM), https://www.huffpost.com/entry/lauren-jauregui-interview_n_58c1add9e4b054a0ea68ff78. PCT's failure to heed this advice is not indicative of wrongdoing by CEI, and per the terms of the controlling agreement, Tennessee law applies to the contract claims in this case.

## II.    The negligent misrepresentation claim is contract-based, and Tennessee law applies.

The Court also concludes that PCT's negligent misrepresentation claim should be decided pursuant to Tennessee law because that cause of action is contract-based. Although negligent misrepresentation is often classified as a tort, *see Maxey v. Quintana*, 1972-NMCA-069, ¶ 17, 84 N.M. 38, 499 P.2d 356,[3] that is not so where such claims arise while negotiating or performing a contract. Restatement (Third) of Torts: Liab. for Econ. Harm § 5 ("This Section does not recognize liability for negligent misrepresentations made in the course of negotiating or performing a contract between the parties."). Here, PCT's negligent misrepresentation claim arises from alleged (mis)statements made by CEI during the performance of the 2017 and 2018 contracts.[4] *See, e.g.*, Doc. 13 at 7 ¶ 45 ("CEI made the material misrepresentation that it intended to perform the work described in the contracts between the parties."). For that reason, the negligent misrepresentation

---

[3] *See also* Restatement (Third) of Torts: Liab. for Econ. Harm § 5 (2020) (discussing negligent misrepresentation as a tort); Restatement (Second) of Torts § 552 cmt. g (1977) (providing that a person may elect to sue either under a negligent misrepresentation claim or under contract).

[4] PCT is seeking to use a tort action to recover economic losses, *see* Doc. 13 at 6 ¶ 27 ("As a result of CEI's failure to complete the work, PCT has suffered damages in the form of lost revenue and business opportunity."), arising from CEI's alleged breach of contract, which is disfavored by courts. *See* Restatement (Third) of Torts: Liab. for Econ. Harm § 5 cmt. m (noting "the judicial consensus against the use of tort suits to recover for economic losses that arise from a breach of contract").

claim here is more appropriately classified as a contract claim.

### III.   The UPA claim is tort-based, and Texas law applies.

PCT's UPA claim is predicated on assertions that CEI misrepresented its ability to fulfill the terms of the contract, offered goods and services without the intent of supplying them, failed to deliver the quantity or quality of goods and services for which PCT contracted, and engaged in unconscionable trade practices due to the gross disparity between the value of what PCT received compared to the amounts PCT paid. Doc. 13 at 6-7 ¶¶ 35-39. Given the nature of these allegations, the Court concludes that the UPA claim is tort-based. *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 749 F. Supp. 2d 1235, 1276 (D.N.M. 2010) (holding that a "[UPA] claim is more akin to a tort claim of fraudulent misrepresentation than to a breach of contract"). "[T]he substantive rights of the parties are [therefore] governed by the law of the place where the wrong occurred," *Terrazas v. Garland & Loman, Inc.*, 2006-NMCA-111, ¶ 12, 140 N.M. 293, 142 P.3d 374—i.e., "the state where the last event necessary to make an actor liable for an alleged tort takes place." Restatement (First) of Conflict of Laws § 377 (1934); *Torres v. State*, 1995-NMSC-025, ¶ 13, 119 N.M. 609, 894 P.2d 386 (stating that, under the doctrine of *lex loci delicti*, "[t]he place of the wrong . . . is the location of the last act necessary to complete the injury") (quotation marks and citation omitted).

Applying these legal directives to the facts presented, the Court finds that the "last event" supporting PCT's UPA claim is CEI's failure to deliver the quantity or quality of goods and services for which PCT contracted. Texas is therefore implicated because that is where the PCT plant is located and where CEI's goods and services were delivered. Doc. 1 at 1 ¶ 2; Doc. 24-1 at 21, 36 (showing the execution pages for the 2017 and 2018 contracts listing Texas as the state to which the goods were to be shipped).

PCT disputes this result. It reasons that CEI was based in New Mexico, accepted the contract in New Mexico, and shipped equipment from New Mexico. Doc. 24 at 10. But these facts are immaterial because they do not reflect the "last event" necessary to make CEI liable for the alleged violation. Because Texas is the *lex loci delicti*, Texas substantive law applies to the UPA claim.

**IV.    The Court will consider CEI's motion as a motion to dismiss.**

A party may move to dismiss based on failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to "test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (quotation marks omitted). If materials outside of the pleadings are presented to the Court on a Rule 12(b)(6) motion, the Court must treat that motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, if those materials are central to the counterclaims and the parties do not dispute their authenticity, then the Court may properly consider the materials referred to in the counterclaim and need not convert the motion to dismiss into one for summary judgment. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

Here, CEI attached the 2017 and 2018 contracts to its Rule 12(b)(6) motion. *See* Doc. 19-1; Doc. 19-2. These contracts are central to PCT's counterclaims because each counterclaim references those contracts, *see* Doc. 13 at 6-8 ¶¶ 28-50, and the parties do not dispute the authenticity of the 2017 or 2018 contracts. *See* Doc. 20 at 5 n.1; Doc. 26 at 3. Hence, even though the Court has before it matters outside of the pleadings,[5] it need not convert the motion into one

---

[5] Because they are not central to the counterclaims, the Court will disregard the following documents that PCT attaches to its response: the affidavit of Winkelman, Doc. 24-1 at 1-6, and Exhibits 1C, *id.* at 37, 1D, *id.* at 38, and 1E. *Id.* at 39-47.

for summary judgment.[6]

V. **The Court grants CEI's motion in part and denies it in part.**

When reviewing a motion to dismiss,[7] the Court accepts all well-pleaded factual allegations in the complaint as true, construes them in the light most favorable to the non-moving party, and then determines whether the complaint plausibly (not just speculatively) states a legal claim for relief. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). To survive a motion to dismiss, a complaint must contain sufficient factual allegations which, if true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court will not accept legal conclusions or unwarranted factual inferences. *Id.* "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).

A. **The Court denies the motion as to the breach of contract counterclaim (Count I).**

Under Tennessee law, "[i]n a breach of contract action, claimants must prove the existence

---

[6] PCT argues that the motion should be considered under a summary judgment standard because CEI "refers to several exhibits" in the motion. Doc. 24 at 2. Yet PCT fails to clarify whether those exhibits constitute "matters outside" of the pleadings warranting summary judgment conversion. Nor does it challenge the centrality of the exhibits to the counterclaims or the authenticity of the materials referenced by CEI. The Court will therefore review CEI's motion under the typical motion to dismiss standard.

[7] A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint. *Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 175 (S.D.N.Y. 2021).

of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). At this juncture, the test is whether—accepting PCT's factual allegations as true and construing those facts in the light most favorable to PCT—PCT has stated a plausible claim for breach of contract. The Court finds that it has.

It is undisputed that a valid and binding contract existed between PCT and CEI. And PCT has sufficiently pled that there was a deficiency in CEI's performance amounting to a breach. Accepting as true PCT's allegations that CEI failed to deliver and install the equipment, Doc. 13 at 6 ¶¶ 29-32, and that the release included in the Note was conditioned on CEI's "commit[ment] to fully perform all of its obligations" under the 2018 contract (i.e., to complete the delivery and installation of the system), Doc. 1-1 at 4, and construing those facts in the light most favorable to PCT, it appears that PCT may not have released "any and all claims, liabilities, obligations, counterclaims, offsets and damages of any kind" against CEI. Doc. 1-1 at 4. Further, PCT has alleged damages caused by CEI's alleged failure to perform: the amount of money paid to CEI to date for the incomplete project; the amount of money paid to outside contractors to complete the project, for which CEI promised it would credit PCT; lost revenue and business opportunities; and attorneys' fees. Doc. 13 at 6 ¶¶ 33-34.

Taken together, these allegations are sufficient for the Court to draw a reasonable inference that CEI is liable for the alleged breach of contract. The Court need not weigh the evidence at this point: it is enough that the allegations pass the "plausible" pleading standard. Accordingly, the Court denies the motion as to the breach of contract counterclaim.

**B.     The Court grants the motion as to the New Mexico UPA counterclaim (Count II).**

Because Texas is the *lex loci delicti*, PCT's UPA claim—which is premised specifically on

New Mexico's UPA, *see* Doc. 13 at 6 ¶ 36—technically fails to state a claim upon which relief can be granted under Texas law. Therefore, its dismissal is warranted pursuant to Rule 12(b)(6).[8]

C.   **The Court denies the motion as to the breach of the covenant of good faith and fair dealing counterclaim (Count III).**

The next question is whether PCT has sufficiently pled facts to plausibly demonstrate that CEI interfered with PCT's right to receive the benefits of the implied contract with CEI. To resolve the matter, the Court again looks to Tennessee jurisprudence. To that end, Tennessee courts "have consistently found that an implied covenant of good faith and fair dealing applies to every contract[.]" *Evans v. Vanderbilt Univ. Sch. of Med.*, 589 F. Supp. 3d 870, 899 (M.D. Tenn. 2022). That tacit pledge provides that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* at 900 (citation omitted). Put differently, "one party cannot in bad faith get in the way of the counterparty's satisfaction of a contract condition that would result in the counterparty's realization of a benefit under the contract." *Id.* A claim for breach of the covenant of good faith and fair dealing "is not a cause of action in and of itself but [is brought] as a part of a breach of

---

[8] Even if the Court exercised its discretion and reached the merits of the motion as it pertains to this claim, it might still be barred under New Mexico law due to the economic loss rule. "The economic loss rule provides that a plaintiff may not recover in tort for losses that are purely economic, i.e., not involving personal injury or property damage." *Farmers All. Mut. Ins. Co. v. Naylor*, 480 F. Supp. 2d 1287, 1289 (D.N.M. 2007) (internal quotation marks omitted); *Utah Int'l, Inc. v. Caterpillar Tractor Co.*, 1989-NMCA-010, ¶ 17, 108 N.M. 539, 775 P.2d 741 (adopting the rule). Nevertheless, at least one court in this district has declined to extend the rule to preclude a claim for violation of the UPA. *See Summit Elec. Supply Co., Inc. v. Int'l Bus. Machs. Corp.*, No. 1:07-cv-00431-MCA-DJS, 2009 WL 9087259, *19-21 (D.N.M. Sept. 30, 2009) (involving a contract for installation of software and corresponding services, both of which plaintiff alleged were inadequate and substandard). Likewise, had PCT properly brought the claim under Texas's Deceptive Trade Practices Act ("DTPA"), it too would have been barred by the rule. *See BCC Merchant Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 469-70 (N.D. Tex. 2015) (explaining that the principles underlying the economic loss rule also apply to DTPA claims where the injury resulted from the failure to perform under the contract).

contract cause of action." *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000).

Here, as discussed earlier, PCT alleged a viable breach of contract claim. And PCT further avers that CEI (1) delayed performance of the contracts; (2) demanded payment not due under the contracts; (3) induced PCT and Winkelman to sign the Note; (4) demanded payment of the Note in full; and (5) falsely represented that the project was complete when it was not. Doc. 13 at 7 ¶ 42. These allegations state a plausible claim for relief. It seems that CEI—either in bad faith or in the absence of good faith—interfered with (by, inter alia, delaying delivery and installation of the equipment yet demanding payment nonetheless) PCT's satisfaction of a contract condition (i.e., paying CEI to deliver and install equipment) which essentially prevented PCT from receiving the benefits of the contract (i.e., the delivery and installation of the equipment and a fully functional automated system). CEI's failure to deliver and install goods prevented PCT from paying CEI and in turn prevented PCT from realizing the fruits of the contract. Based on these allegations, the Court could draw the reasonable inference that CEI is liable for breaching the implied covenant of good faith and fair dealing. The Court therefore denies the motion as to this counterclaim.[9]

**D.     The Court denies the motion as to the negligent misrepresentation counterclaim (Count IV).**

Finally, the Court holds that PCT has provided a sufficient factual predicate to allow its

---

[9] CEI argues that PCT has failed to state a claim upon which relief may be granted because this counterclaim is brought under New Mexico law, *see* Doc. 13 at 7 ¶ 41, not Tennessee law (which controls). Doc. 20 at 13-14. While true, it is a technicality divorced from the substantive issues at play in this litigation, and the Court declines to grant PCT's request to dismiss CEI's breach of the covenant of good faith and fair dealing on that ground. *See VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1169 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 1208 (2022) (clarifying that the standard of review of a motion to dismiss based on the failure to state a claim is de novo); *see also Beenken v. Chicago & N.W.R. Co.*, 367 F. Supp. 1337, 1337 (N.D. Iowa 1973) (explaining that, although "the court has broad discretion in ruling on a motion to dismiss, . . . dismissal should only be granted with care in order to avoid improperly denying plaintiff the opportunity to have [a] claim adjudicated on the merits").

counterclaim for negligent misrepresentation to proceed. Specifically, PCT alleges that it entered into two contracts with CEI to construct an automated system that would manufacture PCT's product. Doc. 13 at 3 ¶ 6. The relevant contracts further provided details about the work that CEI represented it would do for PCT. *Id.* ¶¶ 7-8. The estimated timeframe for completion was six to eight months. Doc. 13 at 4 ¶ 9. PCT alleges this was a misrepresentation because, as of the date of the filing of the answer, CEI has not made any substantial progress on the project. *Id.* at 5 ¶ 23. CEI also represented that the automation system was complete and functional. *Id.* at 5 ¶ 25. PCT alleges that this was a misrepresentation because the automation system "has never been completed and has never been functional." *Id.* CEI represented that it would credit outside contractors. *Id.* at 4 ¶ 15. PCT alleges that this too was a misrepresentation, although it fails to state specifically whether CEI ever credited this expense. *Id.* at 7 ¶ 47.

Further, the Court finds that PCT has alleged that CEI failed to exercise reasonable care in obtaining or communicating the allegedly false information because "CEI had no reasonable ground for believing the [misrepresentations] were true." *Id.* at 8 ¶ 49. And PCT has alleged justifiable reliance because it claims that (1) it has paid about $500,000 to outside contractors to perform work that CEI was contracted to do in reliance on CEI's promise to credit that expense towards the contract price, *id.* at 4 ¶ 16, and (2) it has paid CEI about $600,000 since entering into the contract for a system that it alleges is not complete. *Id.* at 5 ¶ 26.

Under Tennessee law, "to succeed on a claim for negligent misrepresentation, a plaintiff must establish that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably relied on the information." *Morrison v. Allen*, 338 S.W.3d 417, 437 (Tenn. 2011) (alteration and internal quotations marks omitted). PCT's allegations are sufficient to meet

these elements and state a plausible claim for relief. The Court therefore denies the motion as to the negligent misrepresentation counterclaim.

## CONCLUSION

The Court grants CEI's motion in part and denies it in part. Doc. 19. CEI's motion is granted as to Count II (violation of the New Mexico UPA) and denied as to Counts I (breach of contract), III (breach of the covenant of good faith and fair dealing), and IV (negligent misrepresentation).

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA